UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

RAFAEL JONES,

                                Plaintiff,

                -against-

MICHAEL HOLMAN; MILES HOLMAN; EVAN MELE; PATRICK VENETEC; DANIEL BERETTO,

                                Defendants.

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

16 Civ. 556 (AJN)(GWG)

------------------------------------------------------------------------X

       Defendants Michael Holman, Miles Holman, Evan Mele, Patrick Venetek,[1] and Daniel Barreto,[2] by their attorney, Zachary W. Carter, Corporation Counsel for the City of New York, submit this statement pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, to set forth the material facts as to which they contend there is no genuine issue to be tried.

       1.      On January 25, 2016, plaintiff initiated this action by filing a Complaint, naming the State of New York, New York State Police Department, Bellevue Hospital, et al. (*sic*), Police Officer Holman, Police Officer Coleman, Police Officer Benetec, Police Officer Millie, Police Officer Holman, and "John Doe" Asian Decent (*sic*) Physchiatrist (*sic*), et al. (*sic*) as defendants. (Ex. A [Compl.])

       2.      Plaintiff thereafter amended his complaint several times, most recently on April 23, 2018, which names Police Officers Michael Holman, Miles Holman, Evan Mele, Patrick Venetek, and Daniel Barreto as defendants. (Ex. B [Am. Compl.])

---

[1] Patrick Venetek's surname is misspelled in the Fifth Amended Complaint.
[2] Daniel Barreto's surname is misspelled in the Fifth Amended Complaint.

3. The sole cognizable claim in the amended complaint is for false arrest. (Ex. B [Am. Compl.] at p. 8[3] – p. 12)

4. In late 2015, plaintiff began receiving assistance from Services for the Underserved ("SUS"), an agency that provides housing aid and other services to homeless veterans. (Ex. C [Plaintiff Dep.] at 84: 5-12, 85: 5-11, 85: 23 – 86: 1; Ex. D [Wawrynek Dep.] at 9: 6-19, 11: 17 – 12:12; Ex. E [Robinson Dep.] at 8: 10-16, 10: 21 – 11: 4; Ex. F [McCracken Dep.] at 9: 6-14)

5. Among the SUS staff who worked directly with plaintiff were Program Director Adam Wawrynek, Deputy Director Nicole Robinson, and Case Manager Molly McCracken. (Ex. C [Plaintiff Dep.] at 86: 18-25, 87: 24 – 89: 7, 90: 2-13; Ex. D [Wawrynek Dep.] at 10: 12-17, 12: 16 – 13:5; Ex. E [Robinson Dep.] at 9: 7-9, 11: 8-22; Ex. F [McCracken Dep.] at 11: 15-23, 12: 17 – 13: 10)

6. Prior to January 14, 2016, plaintiff had yelled at and been aggressive and threatening towards SUS staff on numerous occasions. (Ex. D [Wawrynek Dep.] at 19: 16-20, 22: 3 – 23: 25, 64: 6-12; Ex. E [Robinson Dep.] at 16: 14-20, 18: 6-21, 22: 5-24; Ex. F [McCracken Dep.] at 22: 24 – 25: 11)

7. Moreover, Wawrynek, Robinson, and McCracken had concerns that plaintiff may have been suffering from mental illness, and had tried to connect him with mental health services. (Ex. D [Wawrynek Dep.] at 19: 2 – 21: 7; Ex. E [Robinson Dep.] at 39: 23 – 40:3; Ex. F [McCracken Dep.] at 17: 9 – 18: 14, 20: 8 – 21: 13)

---

[3] References to page numbers in Ex. B, the Fifth Amended Complaint, correspond to the page numbers in the ECF stamp for Document 139.

8. In fact, during an unrelated hospitalization in September 2014, plaintiff was diagnosed with "paranoid type schizophrenia" at Bellevue Hospital. (Ex. L [Bellevue Recs.] at Def. 366)

9. On January 14, 2016, Wawrynek, Robinson, and McCracken were working at the SUS office located on the 11th floor of 39 Broadway in Manhattan. (Ex. D [Wawrynek Dep.] at 26: 11-22; Ex. E [Robinson Dep.] at 19: 2-9, 20: 22-24; Ex.F [McCracken Dep.] at 25: 24 – 26: 7, 27: 22 – 28: 3)

10. Plaintiff came into the SUS office that day and yelled at and was aggressive towards staff. (Ex. D [Wawrynek Dep.] at 30: 3-6, 32: 13 – 33:10, 34: 10 – 35: 1, 37: 3-8, 38: 18-23; Ex. E [Robinson Dep.] at 25: 16-23, 26: 18-25, 27: 10-16; Ex. F [McCracken Dep.] at 30: 1-7, 40: 20 – 41: 7, 42: 16 – 43: 11, 43: 25 – 44: 15; Ex. M [Incident Rpt.] at Def. 064 – Def. 065)

11. Plaintiff's behavior caused McCracken to fear for her safety to such an extent that she closed herself in a room to hide from him. (Ex. F [McCracken Dep.] at 42: 16 – 43: 11, 43: 25 – 44: 15, 48: 15-17; Ex. M [Incident Rpt.] at Def. 064 – Def. 065)

12. A building security guard was notified of the situation and called 911 to request police assistance because there were people fighting on the 11th floor at "some type of mental facility for veterans." (Ex. N [911 Rec.])

13. Police Officers Michael Holman, Miles Holman, Evan Mele, Patrick Venetek, and Daniel Barreto responded to the call, which was dispatched over the radio as a fight involving an emotionally disturbed person ("EDP"). (Ex. O [Radio Rec.] at 00:00 – 00:42; Ex. G [Michael Holman Dep.] at 8: 13-22; Ex. H [Miles Holman Dep.] at 9: 6-10, 12: 4-15; Ex. I [Mele Dep.] at 11: 13 – 12: 10; Ex. J [Venetek Dep.] at 8: 3-12; Ex. K [Barreto Dep.] at 7: 23 – 8: 14)

14. The officers responded to 39 Broadway and took the elevator to the 11th floor, where they encountered plaintiff, Wawrynek and Robinson. (Ex. C [Plaintiff Dep.] at 120: 17-25; Ex. D [Wawrynek Dep.] at 42: 15-20, 63: 15-19; Ex. E [Robinson Dep.] at 29: 25 – 30: 4; Ex. F [McCracken Dep.] at 48: 5-20; Ex. G [Michael Holman Dep.] at 11: 6-19; Ex. H [Miles Holman Dep.] at 21: 9-24, 22: 11-18; Ex. J [Venetek Dep.] at 10: 12 – 11: 1)

15. Officer Michael Holman and Officer Mele spoke to Wawrynek. (Ex. D [Wawrynek Dep.] at 48: 13-19; Ex. G [Michael Holman Dep.] at 13: 4 – 14: 20; Ex. I [Mele Dep.] at 16: 4-7, 36: 13 – 37: 7, 46: 17-20; Ex. P [Michael Holman Memo Book] at Def. 010; Ex. Q [Mele Memo Book] at Def. 015 – Def. 016; Ex. R [Aided Rpt.] at 045)

16. Wawrynek told Officer Michael Holman that plaintiff had been erratic and aggressive and had threatened staff members who worked on the 11th floor. (Ex. G [Michael Holman Dep.] at 13: 4 – 14: 20, 17: 25 – 18:4, 29: 13-24; Ex. P [Michael Holman Memo Book] at Def. 010)

17. Wawrynek also told Officer Mele that plaintiff had made threats to staff. (Ex. I [Mele Dep.] at 16: 4-7, 36: 13 – 37: 7; Ex. Q [Mele Memo Book] at Def. 015 – Def. 016; Ex. R [Aided Rpt.] at Def. 045)

18. Wawrynek further explained to Officer Michael Holman that plaintiff had been aggressive to SUS staff on previous occasions. (Ex. D [Wawrynek Dep.] at 48: 13-19; Ex. G [Michael Holman Dep.] at 17: 11-20; Ex. P [Michael Holman Memo Book] at Def. 010; Ex. R [Aided Rpt.] at Def. 045)

19. The officers informed plaintiff that he was being detained for a psychiatric evaluation. (Ex. S [Audio Rec.] 2:43 – 2:56)

4

20. Plaintiff responded that he had already had a psychiatric evaluation and had been "cleared." (Ex. S [Audio Rec.] at 2:43 – 2:56)

21. Emergency medical technicians ("EMTs") also responded to the scene. (Ex. C [Plaintiff Dep.] at 134: 18-19; Ex. T [EMT Rpt.] at Def. 474 – Def. 477)

22. The EMTs Prehospital Care Report Summary reflects that the EMTs were "informed that [plaintiff] was on (*sic*) office and started to act aggressive and to make threats to staff. When we approach (*sic*) [plaintiff] he was agitated…[plaintiff] inform (*sic*) that he just got into a (*sic*) argument with the staff." (Ex. T [EMT Rpt.] at Def. 476)

23. Plaintiff was handcuffed and taken in the elevator to the ground floor, where he was put into an ambulance. (Ex. C [Plaintiff Dep.] at 143: 12-16)

24. Plaintiff was transported to Bellevue Hospital in the ambulance. (Ex. C [Plaintiff Dep.] at 143: 20-21; Ex. T (EMT Rpt.] at Def. 475; Ex. R [Aided Card] at Def. 045)

25. Police escorted plaintiff to Bellevue Hospital. (Ex. G [Michael Holman Dep.] at 25: 3-15)

26. The officers walked plaintiff into Bellevue Hospital, removed the handcuffs, and left shortly thereafter. (Ex. C [Plaintiff Dep.] at 154: 10-15; Ex. G [Michael Holman Dep.] at 24: 23 – 25: 1, 25: 19-21, 26: 24 – 27: 5, 30: 13-16, 31: 25 – 32: 7)

27. Bellevue Hospital medical staff noted that plaintiff "arrived agitated and threatening" and that he "attempted to elope and was unable to be verbally redirected," so they administered haloperidol and lorazepam "for safety." (Ex. L [Bellevue Recs.] at Def. 328, Def. 341)

28. Medical staff subsequently spoke to Wawrynek and Robinson over the telephone about what transpired at the SUS office before plaintiff was taken to Bellevue Hospital. (Ex. L [Bellevue Recs] at Def. 334 – Def. 335)

29. Medical staff determined plaintiff "appears to suffer from a chronic psychotic illness. Today he became agitated and hostile and threatening in the context of perceived persecution by SUS and [Bellevue Hospital] staff….He is a danger to other[s] and unable to care for himself." (Ex. L [Bellevue Recs.] at Def. 334)

30. Medical staff determined that plaintiff posed a "substantial danger to self and others" and met the "standards for involuntary commitment." (Ex. L [Bellevue Recs.] at Def. 343)

31. He was held at Bellevue Hospital until he was discharged pursuant to a court order on January 20, 2016. (Ex. L [Bellevue Recs.] at Def. 349 – Def. 350)

32. During plaintiff's stay at Bellevue Hospital, medical staff diagnosed him with paranoid schizophrenia. (Ex. L [Bellevue Recs.] at Def. 350 – Def. 351)

Dated:  New York, New York
        February 14, 2019

**ZACHARY W. CARTER**
Corporation Counsel of the City of New York
*Attorney for Michael Holman, Miles Holman, Evan Mele, Patrick Venetek, and Daniel Barreto*
100 Church Street, Room 3-200
New York, New York 10007
(212) 356-5044

By: _____/s/_____
    Christopher G. Arko
    *Senior Counsel*
    Special Federal Litigation Division

6

cc: Rafael Jones (By Priority Mail)
      *Plaintiff Pro Se*
      1765 Townsend Avenue
      Apt. 5H
      Bronx, NY 10453