UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 2 4 2019

Rafael Arden Jones, Sr.,

                Plaintiff,

-against-

State of New York et al.,

                Defendants.

16-CV-556 (AJN)

OPINION & ORDER

ALISON J. NATHAN, United States District Judge:

On January 14, 2015, Plaintiff Rafael Arden Jones, Sr. was arrested outside of an agency that provides services to homeless veterans and taken to Bellevue Hospital. Mr. Jones now sues under 42 U.S.C. § 1983 for false arrest, alleging that the police officers who arrested him lacked probable cause to conclude that he appeared mentally ill and posed a probable or significant risk of serious harm to himself or others. Defendants now move for summary judgment and Mr. Jones cross-moves. For the reasons given below, Defendants' motion is GRANTED and Mr. Jones' motion is DENIED.

I.     BACKGROUND

Except where otherwise noted, the following facts are not in dispute. In 2015, Mr. Jones began receiving services from Services for the Underserved ("SUS"), which assists homeless veterans and veterans at risk of homelessness. Def. 56.1, Dkt. No. 174 ¶ 4. Mr. Jones worked directly with the Program Director Adam Wawrynek, Deputy Director Nicole Robinson, and Case Manager Molly McCracken. *Id.* ¶ 5.

1

## A. The Police Are Called

On January 14, 2016, Mr. Jones came to the SUS office to obtain a MetroCard. Molly McCracken Deposition ("McCracken Dep."), Dkt. No. 173, Ex. F, 39:7-12. When Ms. McCracken refused to give him one, he became irritated and kept interrupting her, and she became annoyed with him. McCracken Dep., 38:15-25, 39:1-25, 40:1-8. After their argument, Mr. Jones apologized, complimented Ms. McCracken's makeup, and walked away. McCracken Report, Dkt. No. 173, Ex. M, at 1.

At some point, an unknown individual in the building contacted a security guard and the security guard called 911. The security guard told the 911 dispatcher that a "big fight, an argument" was happening at a "mental facility for veterans." 911 Recording, Dkt. No. 173, Ex. N. at 00:53 – 00:58, 1:25 – 1:50). The 911 radio dispatcher then put out a call that there was an emotionally disturbed person "fighting with mental history." Dispatch Recording, Dkt. No. 173, Ex. O, at 00:01 – 00:15. The five officers who responded to the call are the Defendants in this case: Officers Michael Holman, Miles Holman, Evan Mele, Patrick Venetek, and Daniel Barreto. Def. 56.1 ¶ 13. None of the officers listened to the 911 call and either misidentified the person who made the call, Michael Holman Deposition ("Michael Holman Dep."), Dkt. No. 173, Ex. G, 13:7-10; 18:2-10, or did not know who made the call, Evan Mele Deposition ("Mele Dep."), Dkt. No. 173, Ex. I, 13:12-17; Miles Holman Deposition ("Miles Holman Dep."), Dkt. No. 173, Ex. H, 11:10-12; Venetek Deposition ("Venetek Dep."), Dkt. No 173, Ex. J, 9:9-13. And while it is general practice to inquire as to who made the 911 call, there is no indication that the officers did so. Miles Holman Dep. at 11:13-15.

Before the police arrived, Mr. Wawrynek and Ms. Robinson had walked with Mr. Jones to the elevator lobby on the 11th floor outside of the SUS offices to deescalate the situation. Robinson Deposition ("Robinson Dep."), Dkt. No. 173, Ex. E, 25:18-25, 26:1-2, 26:20-25, 28:3-

2

21, 58:12-13. At that point, Mr. Jones had calmed down and was leaving. *Id.* 28:3-21. When the police arrived, Mr. Jones, Mr. Wawrynek, and Ms. Robinson did not have their voices raised and were not arguing. Adam Wawrynek Deposition ("Warynek Dep."), Dkt. No. 173, Ex. D, 43:18-20; Miles Holman Dep. at 23:18-19; Michael Holman Dep. at 12:11-16.

### B. Defendants' Direct Observations of Mr. Jones

Once the police arrived, Mr. Jones became defensive and agitated, raising his voice and asserting his legal rights. Robinson Dep. at 37:16-18. This is confirmed by a partial audio recording that Mr. Jones made of the interaction, in which he can be heard asking the police to return his identification card, stating that he does not want medical treatment, and asserting that the police do not have probable cause to seize him. *See* Jones Recording, Dkt. No. 173, Ex. S.

Officer Michael Holman thought Mr. Jones was emotionally disturbed because, in addition to being upset, he "wasn't being very clear with his answers" and was talking about things that had happened to him in the past rather than answering the officer's questions. Michael Holman Dep. at 15:15-25. Officer Miles Holman believed Mr. Jones was emotionally disturbed because he had refused to leave the SUS, which was unreasonable since if "[y]ou don't get services, you just leave, you call customer service, you go up the chain. You just don't park yourself in an office and not leave." Miles Holman Dep. at 35:13-21, 50:6-9. Ms. Robinson reported that based on Mr. Jones' behavior, the officers could have reached the same conclusion that she had, which was that Mr. Jones was likely suffering from mental illness. Robinson Dep. at 40:7-19, 53:5-11. Finally, in contrast to the others, Officer Mele testified that there was nothing Mr. Jones did or said that caused him to believe that Mr. Jones was mentally ill. Mele Dep. at 20:7-12.

As to whether he posed a risk, Mr. Jones was argumentative and defensive, though officers did not personally observe Mr. Jones making any threats. Mele Dep. at 26:13-15; Miles Holman Dep. at 26:9-14. Mr. Jones stayed in one place during the interaction with police, was not violent at any point, and none of the officers report that they feared for their safety. Mele Dep. at 26:10-12; Miles Holman Dep. at 36:3-5. Nor did Mr. Jones do anything to intimidate the officers. Robinson Dep. at 54:17-23, 59:12-15. However, Officer Mele reported that Mr. Wawrynek and Ms. Robison appeared "fearful" and "concerned." Mele Dep. at 18:15-17.

### C. What Defendants Were Told About Mr. Jones' Mental Health

In addition to their direct observations, after they arrived on the eleventh floor, Officers Mele and Michael Holman spoke to Mr. Wawrynek about Mr. Jones' mental health. Michael Holman Dep. at 13:4-25, 14:20; Mele Dep. at 16: 4-9; Wawrynek Dep. at 40:25, 43:1-8, 44:17-25, 45:1-3, 17-25.

As to the substance of the officers' conversation with Mr. Wawrynek, Officer Michael Holman testified that Mr. Wawrynek "pretty much said [Mr. Jones] is bipolar," by which he meant that Mr. Jones would sometimes be calm and sometimes cause commotions. Michael Holman Dep. at 14:13-17. Officer Michael Holman further testified that Mr. Wawrynek asked the police to take Mr. Jones to the hospital. *Id.* 16:19-25. Officer Miles Holman says that the police understood that from Mr. Wawrynek Mr. Jones needed "some sort of medical attention, like a psych eval." Miles Holman Dep. at 42:13-19. Mr. Wawrynek testified that some of Mr. Jones' behavior appeared paranoid, but that since he was not himself a clinician he was unable to offer any diagnosis. Wawrynek Dep. at 17:8-13. Mr. Wawrynek also does not remember whether or not he requested that the police take Mr. Jones to seek psychiatric care. *Id.* 48:5-7.

Finally, Mr. Jones informed the officers that he did not wish to receive medical attention and that he had already had a psychiatric evaluation and been "cleared." Ex. S. 2:43-56.

### D. What Defendants Were Told About Threats Made by Mr. Jones

Ms. Robinson and Mr. Wawrynek also made statements to the officers about Mr. Jones relevant to whether Mr. Jones posed a risk to others.

Mr. Wawrynek told the police that Mr. Jones had been aggressive with SUS staff on previous occasions. Wawrynek Dep. at 48:13-15. However, Mr. Wawrynek does not recall telling the police that Mr. Jones posed a danger to anyone in the office on that day. Wawrynek Dep. at 51:4-8. The Defendants also provide some testimony as to what Mr. Wawrynek said. Officer Michael Holman testified that he learned from Mr. Wawrynek that Mr. Jones had been making violent threats to SUS staff that day. Michael Holman Dep. at 13:10-25; 14:1-11, 18:8-10. Officer Michael Holman further testified that Mr. Wawrynek said that Mr. Jones would come into the office and make violent threats to staff. Michael Holman Dep. at 17:21-25. Officer Venetek testified that Mr. Wawrynek said Mr. Jones had made suicidal statements. Venetek Dep. at 13:2. Officer Mele also noted that Mr. Jones threatened SUS workers. Mele Dep. at 36:11-23. However, he said that the officers had no reason to believe that Mr. Jones was suicidal or a risk to himself. Mele Dep. at 20:13-16, 21:4-8. Ms. Robinson also told the police that Mr. Jones was not dangerous. Robinson Dep. at 36:13-21.

Mr. Jones argues that the officers' testimony about Mr. Wawrynek's statements is hearsay. Dkt. No. 182 ¶¶ 15-18. The prohibition against hearsay does not bar these statements, however, because they are not offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement"). In other words, they are not offered to prove that

Mr. Jones did in fact make such threats to SUS staff. Instead, the statements are offered to show that the Defendants had information sufficient to constitute probable cause. *See Smith v. City of New York*, 697 Fed. Appx 88, 89 (2d Cir. 2017); *Richards v. City of New York*, No. 97-cv-7990 (MBM), 2003 WL 21036365, *6 (S.D.N.Y. May 7, 2003). These documents are therefore admissible evidence.

### E. Arrest and Transportation to Bellevue

A few minutes after the officers arrived, they told Mr. Jones that he could not leave and handcuffed him. Robinson Dep. at 31:13-17, 35:16-21; Michael Holman Dep. at 21:4-7. At some point during the encounter, Emergency Medical Services (EMS) arrived, who are automatically dispatched when a call regarding an emotionally disturbed person goes out. Michael Holman Dep. at 21:4-7; Mele Dep. at 24:18-25. Mr. Jones was then taken to Bellevue Hospital in an ambulance. Def. 56.1 ¶¶ 23-25. At Bellevue, Mr. Jones was diagnosed with paranoid schizophrenia. Bellevue Records, Dkt. No. 172, Ex. L at 1. Staff at Bellevue sedated Mr. Jones and determined that he was a danger to others and unable to care for himself. *Id.* A few days later, Mr. Jones was discharged pursuant to a court order. *Id.*

Mr. Jones contends that the Bellevue records are hearsay. However, Defendants have provided a certification from a custodian of records that the documents were produced in the ordinary course of business activity. *See* Dkt. No. 187, Ex. U. Mr. Jones has not provided any reason to believe that the documents were created for personal purposes or in anticipation of litigation. *See, e.g., United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010). Accordingly, these documents are admissible under Federal Rule of Evidence 803(6). *Id.*; *see also Ortiz v. City of New York*, No. 15-cv-2206 (DLC), 2017 WL 5613735, at *9 (S.D.N.Y. Nov. 21, 2017) (admitting medical records under business records exception).

F.  **Procedural Background**

This case has a long and tangled procedural history, which the Court briefly summarizes as relevant. On January 25, 2016, Mr. Jones filed a complaint with this court. Dkt. No. 2. On September 28, 2017, the Court granted Defendants' partial motion to dismiss as to one Defendant. Dkt. No. 93. On April 23, 2018, Mr. Jones filed his Fifth Amended Complaint. Dkt. No. 139. On February 14, 2019, Defendants moved for summary judgment. Dkt. No. 172. On April 25, 2019, Mr. Jones filed his opposition to Defendants' motion, which he also styled as a cross-motion for summary judgment. Dkt. Nos. 182-83. On May 24, Defendants filed an opposition to Mr. Jones' motion and a reply in support of their motion. Dkt. No. 188. Mr. Jones did not file a reply.

## II. LEGAL STANDARDS

A.  **Summary Judgment**

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting this analysis, a court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and alterations omitted). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and accordingly the court will grant summary judgment to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

Additionally, "when parties cross-move for summary judgment, the court examines each party's motion on its own merits and draws all inferences against the moving party." *Mizrahi v.*

7

*City of New York*, No. 15-cv-6084 (ARR), 2018 WL 3848917, at *6 (E.D.N.Y. Aug. 13, 2018) (citing *Morales v. Quintei Entertainment, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

Finally, "[i]n addressing the present motion, the Court is also mindful that the plaintiff is proceeding pro se and that her submissions should be held to less stringent standards than formal pleadings drafted by lawyers." *Sank v. City Univ. of New York*, No. 94-cv-0253 (RWS), 2003 WL 21403682, at *3 (S.D.N.Y. June 19, 2003) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)) (internal quotation marks and alterations omitted).

## III. DISCUSSION

Defendants move for summary judgment on two grounds. First, Defendants contend that the arresting officers had probable cause to arrest Mr. Jones as a matter of law. Second, even if not, Defendants argue that the officers had arguable probable cause as a matter of law and are accordingly protected by qualified immunity. Because the Court concludes that even viewing all the information in the light most favorable to Mr. Jones, Defendants are entitled to qualified immunity, it is unnecessary to reach the question of whether Defendants had probable cause. Furthermore, because Defendants are protected by qualified immunity, Mr. Jones' motion for summary judgment is denied.

The Court first examines the standards for probable cause and for qualified immunity before turning to the application of those standards in the context of Defendants' motion.

### A. Probable Cause under New York Mental Hygiene Law § 9.41

In general, "[p]robable cause . . . exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief" that the relevant law is being violated, or, in this case, that a person poses a risk of violence. *Zellner v. Summerlin*, 494 F.3d 344, 368–69 (2d Cir.

8

2007) (citing cases). When conducting this analysis, "courts must consider those facts *available to the officer* at the time of the arrest and immediately before it" and this standard "does not require absolute certainty." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citation omitted). A court must examine the "totality of the circumstances and must be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (internal quotation marks omitted). "Nevertheless, an officer may not disregard plainly exculpatory evidence." *Id.* (citing *Kerman v. City of New York ("Kerman II")*, 261 F.3d 229, 241 (2d Cir. 2001).

In the specific context of New York Mental Hygiene Law § 9.41, the statute authorizes "[a]ny . . . police officer . . . [to] take into custody any person who appears to be mentally ill and is conducting himself in a manner which is likely to result in serious harm to himself or others." N.Y. M.H.L. § 9.41. The statute goes on to define "likely to result in serious harm" as

> (a) a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself, or (b) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

N.Y. Mental Hyg. Law § 9.01. The Second Circuit has "interpreted [§9.41] as imposing the same objective reasonableness standard that is imposed by the Fourth Amendment." *Kerman v. City of New York ("Kerman III")*, 374 F.3d 93, 100 (2d Cir. 2004) (citing *Kerman II*, 261 F.3d at 240 n. 8). This means that to "handcuff and detain, even briefly, a person for mental-health reasons, an officer must have probable cause to believe that the person presented a risk of harm to herself or others." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (internal quotation marks and brackets omitted). This requires showing "a probability or substantial chance of

9

dangerous behavior," though "not an actual showing of such behavior." *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 622 (S.D.N.Y. 2015), *aff'd*, 665 Fed. App'x. 49 (2d Cir. 2016) (internal quotation marks and brackets omitted). Finally, irrational or delusional behavior and mental illness alone are insufficient to justify an arrest, as "[a] person may be annoyed, uncooperative, and irrational without presenting a danger to herself or of violence to others." *Myers*, 819 F.3d at 634.

### B. Qualified Immunity Protects Officers Who Had Arguable Probable Cause

Qualified immunity "protects government officials from suit if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity analysis asks whether (1) a plaintiff has sufficiently pled the violation of a constitutional or statutory right, (2) that right was "clearly established," and (3) it was "objectively reasonable" for the official to believe their conduct was lawful. *Id.* at 154-55 (citing *Taravella v. Town of Wolcott*, 599 F.3d 129, 133–34 (2d Cir. 2010)). Here, Defendants do not contend that the right in question was not clearly established, but only that it was objectively reasonable for the officers to conclude that Mr. Jones' arrest was lawful.

As to the objective reasonableness inquiry, in the context of a false arrest claim, "an officer is entitled to qualified immunity if he had . . . arguable probable cause." *Dufort v. City of New York*, 874 F.3d at 354 (internal quotation marks omitted). This is analytically distinct from the probable cause analysis and is "more favorable to . . . officers than the [standard] for probable cause." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed,

10

or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)). However, "[a]rguable probable cause should not be misunderstood to mean almost probable cause." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)). Thus, "[i]f officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Id.*

### C. Defendants Had Arguable Probable Cause that Mr. Jones Posed a Risk of Violence to Others

Even viewing the evidence in the light most favorable to Mr. Jones, the Defendants had arguable probable cause to conclude that he appeared mentally ill and posed "a probability or substantial chance of dangerous behavior." *Heller*, 144 F. Supp. 3d at 622. The Court examines various pieces of information available to the officers at the time of the arrest in turn before considering all of this information as a totality.

Mr. Wawrynek's statements, even viewed in the light most favorable to Mr. Jones, provided substantial reason to conclude to Mr. Jones was mentally ill and posed a risk of serious physical harm to others. In general, "[w]hen information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (internal citation omitted). In the context of § 9.41, reports that an individual has threatened others or acted aggressively can be sufficient to support a finding of probable cause. *See Myers*, 819 F.3d at 634 ("Needless to say, appropriate reports of dangerous behavior might well justify a seizure."); *Arroyo v. City of New York*, No. 14-cv-9953 (JPO), 2016 WL 8677162, at *4 (S.D.N.Y. July 8, 2016), *aff'd*, 683

F. App'x 73 (2d Cir. 2017) (identified source told police that plaintiff "was threatening to her mother and kept a gun in the home" and a second identified source told the police that the mother "expressed that she was not permitted to leave her room"); *Hicks v. The City of New York*, No. 12-cv-5081 (PKC), 2015 WL 5774575, at *6 (E.D.N.Y. Aug. 27, 2015), *report and recommendation adopted*, No. 12-cv-5081 PKC SMG, 2015 WL 5774658 (E.D.N.Y. Sept. 30, 2015) (plaintiff's wife called 911 and told them "plaintiff was violent, knew martial arts, and had threatened [her]").

Mr. Wawrynek's told the police that Mr. Jones acted as if he was mentally ill, had threatened and behaved aggressively towards staff including that night, that he needed medical help, and that he had made violent threats in the past. Michael Holman Dep. 13:10-25, 14:1-11, 14:13-17, 16:19-25, 17:21-25, 18:8-10; Miles Holman Dep. 42:13-19; Wawrynek Dep. 48:13-15. Mr. Jones offers no argument for why the officers should have doubted Mr. Wawrynek's veracity.[1] Even viewing this in the light most favorable to Mr. Jones, Mr. Wawrynek's statements to the police provided them with significant reason to believe that Mr. Jones posed a risk of serious physical harm to others.

Nor were Mr. Wawrynek's statements the only evidence the officers had. By the time the police arrested Mr. Jones, it is also undisputed that they had the following evidence that Mr. Jones was a danger to others: (1) a radio dispatch call stating that an emotionally disturbed person was in a fight; (2) their own observations of Mr. Jones' argumentative, defensive, and irrational behavior, which included raising his voice with the officers; and (3) their observation that Mr. Wawrynek and Ms. Robinson were afraid and concerned. Dispatch Recording, Dkt. No. 173, Ex. O, at 00:01 – 00:15; Mele Dep. 18:15-17, 26:13-15; Miles Holman Dep. 26:9-14;

---

[1] Mr. Jones argues that the Court should not consider these statements because they are hearsay. As noted above, however, they fall outside the prohibition on hearsay because they are not offered for the truth of the matter asserted.

Robinson Dep. 37:16-18. And while the fact that the officers did not know who placed the original 911 call does reduce the extent to which Defendants could rely on it, *Kerman II*, 261 F.3d at 232, it was still a relevant piece of information. In sum, even viewing the above in the light most favorable to Mr. Jones, this information would provide further basis for a reasonable person to conclude that Mr. Jones was mentally ill and posed a risk to others of serious physical harm.

To be sure, it is also undisputed that Ms. Robinson told the officers that Mr. Jones was not dangerous. The Court also takes this into account, as the officers were not permitted to disregard this exculpatory evidence from a reliable witness. *See Panetta v. Crowley*, 460 F.3d at 395. However, Ms. Robinson also testified that the officers could have concluded from observing Mr. Jones that he was mentally ill. Robinson Dep. at 40: 7-18, 53: 5-11. Viewed in the light most favorable to Mr. Jones, Ms. Robinson's statement to the police would give a reasonable person reason to question whether Mr. Jones was dangerous, and would further confirm that he was mentally ill.

Viewing the totality of the information available to Defendants in the light most favorable to Mr. Jones, "officers of reasonable competence could disagree on whether the probable cause test was met." *Figueroa*, 825 F.3d at 100 (quoting *Zalaski*, 723 F.3d at 390). Witness reports of threatening behavior and threats of violence can justify an arrest under § 9.41. *See Arroyo*, 2016 WL 8677162, at *4; *Hicks*, 2015 WL 5774575, at *6. Accordingly, a reasonable officer could conclude that Mr. Wawrynek's statements, corroborated by the radio dispatch call and the officers' own observation of Mr. Jones' argumentative and irrational behavior, would be sufficient to lead a person of reasonable caution to believe that Mr. Jones appeared mentally ill and posed "a probability or substantial chance of dangerous behavior."

*Heller*, 144 F. Supp. 3d 596, 622. And while Ms. Robinson's statement that Mr. Jones was not dangerous must also be considered, even viewed in the light most favorable to Mr. Jones, reasonable officers could disagree as to whether her statement so outweighed the other evidence available to the officers that the probable cause was not met. *See Figueroa*, 825 F.3d at 100. Thus, even viewing the evidence in the light most favorable to Mr. Jones, no reasonable juror could conclude that Defendants lacked arguable probable cause to believe that Mr. Jones appeared mentally ill and posed a risk of substantial harm to others.

### IV. CONCLUSION

For the reasons given above, Defendants' motion for summary judgment is GRANTED and Plaintiff's is DENIED. This resolves docket items 172 and 183. The Clerk of Court is directed to enter judgment and close the case.

The Court will mail a copy of this Opinion and Order to the *pro se* Plaintiff and a notice of this mailing will be posted on the public docket.

SO ORDERED.

Dated: September 23, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge